IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

DAVID CAREY, an individual

    Plaintiff(s),

v.

DENVER PUBLIC SCHOOLS;
DPS BOARD OF EDUCATION

    Defendant(s).

## COMPLAINT WITH JURY DEMAND

Plaintiff, David Carey ("Plaintiff" or "Mr. Carey") who appears individually, hereby respectfully files this action against Defendants Denver Public Schools ("DPS") and DPS Board of Education ("Board") (collectively "Defendants"), through the undersigned counsel of record Kishinevsky & Raykin, Attorneys at Law, and states on information and belief as follows. This action seeks injunctive relief and appropriate damages and costs.

### I. JURISDICTION AND VENUE

1. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Federal question jurisdiction arises under the Constitution and laws of the United States of America, including but not limited to the Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e *et seq.*), 42 U.S.C. § 1981, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983.

2. The court has supplemental jurisdiction over the state-based claims below under 28 U.S.C. § 1367(a) as these claims arise out of the same transactions and occurrences.

3. Plaintiff David Carey is a resident of Denver County, Colorado.

4. Defendants DPS and the Board are located in Denver County, Colorado.

5. The wrongful acts alleged by Plaintiff occurred in whole or in part in Denver County, Colorado.

6. Venue is proper in this court under 28 U.S.C. § 1391(b)(2).

## II.     FACTUAL BACKGROUND

7. Plaintiff is an African American male.

8. Plaintiff began employment with DPS in or around December 2012.

9. Plaintiff was employed as the Head Varsity Assistant Basketball coach at Denver East High School

10. Denver East High School's basketball program was one of the top basketball programs in the state of Colorado

11. Plaintiff's father was the Head coach, and Plaintiff was involved in running the entirety of the basketball program with his father in the hopes that he would become the next head coach when his father stepped down.

12. While employed at DPS, Plaintiff was subjected to a pattern of racial discrimination and harassment that culminated in Plaintiff's racially discriminatory discharge.

13. DPS District Athletic Director Karen Higel ("Ms. Higel") had a history of harassing Plaintiff during his employment with DPS.

14. Ms. Higel is white female.

15. For example, during the course of Plaintiff's employment with DPS, a parent made an unfounded accusation that Plaintiff was selling edibles to kids. There was no truth to the accusation, and an investigation by DPS and security found that there was no truth to the accusation within a week. Despite the fact that the accusation was unfounded and an investigation quickly determined that there was no truth to the accusation, Ms. Higel kept Plaintiff on administrative leave for seven months.

16. Ms. Higel and District officials had a history of subjecting Plaintiff to harassment and criticism that was not directed at white coaches.

17. For example, Plaintiff was subjected to criticism for bringing in students to use the building. White coaches engaged in the same practice were not subjected to criticism.

18. Several meetings were held about Plaintiff allowing students to use the building despite the fact that white coaches engaged in the same practice and were not subjected to criticism or required to attend meetings to discuss the practice.

19. Additionally, Plaintiff was subjected to criticism regarding mask-wearing to which other white coaches were not.

20. East High School Athletic Director Dackri Davis ("Ms. Davis") yelled at Plaintiff over students not wearing masks.

21. Ms. Davis is a white female.

22. At the time Ms. Davis reprimanded Plaintiff regarding students not wearing masks, DPS did not have a mask mandate. Furthermore, cheerleaders were walking through the building without wearing masks. Other white coaches were not reprimanded or yelled at regarding mask wearing.

23. Ms. Davis and other DPS officials regulated Plaintiff regarding mask wearing. Other white coaches were not subjected to the same regulation regarding mask wearing.

24. In or around November 2021, Plaintiff needed to provide his daughter's school verification of his income.

25. Plaintiff was not sure how his pay was calculated. Plaintiff was not sure if as a coach he was provided a stipend or if he was paid hourly.

26. Plaintiff was never provided any training on timesheets or how to enter his time on timesheets.

27. Plaintiff reached out to human resources to ask about his pay. Human resources told Plaintiff to ask the athletic director.

28. Plaintiff reached out to Ms. Davis. Ms. Davis told Plaintiff to contact Ms. Higel. Plaintiff replied that he had had issues with Ms. Higel in the past and did not feel comfortable communicating with her directly. Ms. Davis responded by calling Plaintiff a "stupid idiot" or "stupid nigger."

29. Plaintiff did not receive clarification regarding his pay or information about properly using timesheets.

30. In or around December 2021, Plaintiff input hours on his timesheet.

31. Plaintiff mistakenly input too many hours. Plaintiff also mistakenly input hours for a non-contact day, a day that according to CHSAA bylaws, coaches are not to have contact with student athletes.

32. At the time Plaintiff mistakenly input incorrect hours, he was suffering from COVID. Plaintiff had never previously made such mistakes.

33. Plaintiff never received any clarification regarding his questions about how his pay was calculated, and Plaintiff reasonably believed that his pay was based on a stipend – meaning that if he submitted hours beyond what was available in the stipend, he simply would not be paid for those excess hours. Plaintiff did not believe that he was paid on an hourly basis and would continue to receive pay if he submitted hours above the hours he was supposed to work.

34. Under DPS policy, if a timesheet was submitted with mistakes, it would not be accepted and kicked back to the employee submitting it who would be given the chance to amend the timesheet.

35. On information and belief, no one has been terminated for a mistaken timesheet before.

36. DPS moved to terminate Plaintiff's employment in February 2022.

37. DPS's reasons for terminating Plaintiff were pretextual.

38. DPS had no reason to suspect Plaintiff's mistaken December 2021 timesheet was deliberately falsified. Plaintiff never deliberately falsified a timesheet while an employee of DPS.

39. Plaintiff was never provided with any training on the proper use of timesheets.

40. Plaintiff was never provided an answer to his inquiries regarding his pay.

41. Plaintiff was never provided notice of his mistake and provided an opportunity to amend in violation of DPS policy.

42. On information and belief, no other employee had previously been terminated for submitting a mistaken timesheet.

43. In the course of moving to terminate Plaintiff, DPS accused Plaintiff of falsifying a timesheet in 2019. Plaintiff never falsified a timesheet as an employee of DPS. In 2019, Plaintiff was informed that he had failed to submit any hours for a pay period, and therefore, Plaintiff submitted those hours on the subsequent pay period.

44. DPS's move to terminate Plaintiff in February 2022 was part of the pattern of racial discrimination and harassment Plaintiff was subjected to during his employment.

45. Plaintiff was terminated in February 2022.

46. As a result of Plaintiff's termination, Plaintiff has suffered damages including but not limited to lost wages and emotional distress.

47. Plaintiff filed a timely charge of discrimination with the Colorado Civil Rights Division ("CCRD").

48. Plaintiff has exhausted his administrative remedies.

### III.   CLAIMS AND CAUSES OF ACTION

#### A.   FIRST CLAIM FOR RELIEF
*(VIOLATION OF 42 U.S.C. § 1981)*

49. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

50. 42 U.S.C. § 1981 provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

51. § 1981 defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

52. At all times relevant to this action, Plaintiff was qualified to hold the position of Head Varsity Assistant Basketball coach.

53. Despite stellar job performance, Plaintiff was terminated.

54. Plaintiff was terminated under circumstances that give rise to an inference of racial discrimination, and Plaintiff's termination was the culmination of a pattern of racial discrimination and harassment.

55. Any non-discriminatory reasons alleged by Defendants for Plaintiff's termination are factually false and pretextual.

56. Plaintiff's termination was the result of unlawful racial discrimination.

## B.  SECOND CLAIM FOR RELIEF
### (*VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964*)

57. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

58. Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits an employer from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment, because of the individual's race or color.  42 U.S.C. § 2000e-2(a)(1).

59. Under *McDonnell Douglas Corp. v. Green*, cases of discrimination are evaluated using a burden-shifting analysis.  411 U.S. 792, 802 (1973).  "First, the plaintiff must establish a prima facie case of discrimination.  Second, if the plaintiff carries his initial burden, the burden shifts to the defendant to 'articulate some legitimate nondiscriminatory reason'

for the challenged workplace decision. Third, if the defendant carries this burden, the plaintiff has an opportunity to prove that the legitimate reasons the defendant offered were merely a pretext for discrimination." *Notari v. Denver Water Dept.*, 971 F.2d 585, 588 (10th Cir. 1992).

60. At all times relevant to this action, Plaintiff was qualified to hold the position of Head Varsity Assistant Basketball coach.

61. Despite stellar job performance, Plaintiff was terminated.

62. Plaintiff was terminated under circumstances that give rise to an inference of racial discrimination, and Plaintiff's termination was the culmination of a pattern of racial discrimination and harassment.

63. Any non-discriminatory reasons alleged by Defendants for Plaintiff's termination are factually false and pretextual.

64. Plaintiff's termination was the result of unlawful racial discrimination.

### C.   THIRD CLAIM FOR RELIEF
*(42 U.S.C. § 1983 CLAIM FOR VIOLATION OF CONSTITUTIONAL RIGHTS)*

65. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

66. 42 U.S.C. § 1983 provides that: "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…"

67. Plaintiff is a citizen of the United States and Defendants are persons for the purposes of 42 U.S.C. § 1983.

68. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires states to treat an individual in the same manner as others in similar conditions and circumstances.

69. As state actors Defendants are subject to the Constitutional requirements under the Fourteenth Amendment to the U.S. Constitution, to provide equal protection of the laws.

70. At all relevant times Defendants were acting under color of state law in their capacity as a public school district.

71. The Complaint alleges in part the deprivation of rights afforded under the Fourteenth Amendment to the United States Constitution, and Title VII, rights are clearly established, rights about which Defendants are acutely aware.

72. In order for a municipality to be liable for damages, a plaintiff must show that his or her rights were violated pursuant to an official policy of the district or the plaintiff must show that his or her rights were violated by one of the district's final policymakers. *Milligan-Hitt v. Bd. of Trs., Sheridan Cnty. Sch. Dist. No 2*, 523 F.3d 1219, 1223 (10th Cir. 2008).

73. Defendants are final policymakers with respect to employment decisions.

74. Plaintiff's termination was the official policy of Defendants.

75. Defendants terminated Plaintiff's employment because of Plaintiff's race in violation of the Equal Protection Clause.

76. The final policymakers' racially discriminatory employment decision and Defendants' official policy terminating Plaintiff's employment was the moving force behind the injury

to Plaintiff, and the final policymakers' actions and Defendants' official policy in violation of the Equal Protection Clause give rise to municipal liability.

77. As a direct and proximate result of Defendants' conduct, Plaintiff was deprived of his federally-protected individual rights and suffered other damages including severe emotional distress entitling him to compensatory and special damages, in amounts to be determined at trial.

78. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), pre-judgment interest, and costs as allowable by federal law. Plaintiff is also entitled to punitive damages against Defendants pursuant to 42 U.S.C. § 1983 as Defendants acted maliciously, willfully, or with a reckless and wanton disregard for Plaintiff's Constitutional rights.

### D.   FOURTH CLAIM FOR RELIEF
### *(VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT)*

79. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

80. The Colorado Anti-Discrimination Act ("CADA") prohibits an employer from refusing to hire, discharging, promoting or demoting, harassing during the course of employment, or discriminating in matters of compensation, terms, conditions, or privileges of employment against any person otherwise qualified because of race or color. C.R.S.A. § 24-34-402(1)(a).

81. The Defendants violated CADA through their wrongful acts alleged herein.

82. Plaintiff has exhausted his administrative remedies as required under CADA.

83. Defendants' violations of Plaintiff's rights under CADA caused Plaintiff to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities and attorney fees and costs in this action.

## IV.   DAMAGES

84. The Defendants' discriminatory conduct alleged hereinabove has caused the Plaintiff damages, including but not limited to the following:
    a. Lost wages, lost front pay, future wages, and benefits in amounts to be established at trial;
    b. Emotional distress, upset, stress, and anxiety in an amount to be established at trial;
    c. Out-of-pocket expenses, litigation costs, and attorney fees in amounts to be established at trial.
85. Defendants' violations of Title VII and the Equal Protection Clause were willful, entitling the plaintiff to an award of punitive damages to the fullest extent permitted by law.

## V.   REQUEST FOR RELLIEF

Plaintiff requests that the court enter judgment in his favor and against Defendants as follows:

86. Awarding the Plaintiff's damages for lost wages, lost front wages, benefits, and out-of-pocket expenses in amounts to be established at trial;
87. Awarding the Plaintiff general damages for emotional distress in an amount to be established at trial;
88. Punitive damages, pususant to 42 U.S.C. 1981, 2000(e), in the maximum amount permitted by law;

89. Awarding the Plaintiff statutory and reasonable attorney fees, litigation expenses, and costs incurred in this action;

90. Awarding Plaintiff pre-judgment interest; and

Awarding the Plaintiff any additional and further relief that the court finds equitable, appropriate, or just.

### PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE

*s/ Igor Raykin*
Igor Raykin, Esq.
Michael Nolt, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846; (720) 588-9713
E-mail: igor@coloradolawteam.com; michael@coloradolawteam.com
***Attorneys for Plaintiff***